IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PAUL NICHOLSON *

Plaintiff, *

v. * Civil Action No.: RDB-13-3711

FITZGERALD AUTO MALL, et al. *

Defendants. *

* * * * * * * * * * * * *

**MEMORANDUM OPINION**

The Plaintiff Paul Nicholson brought various statutory and common law claims against Defendants FOC Inc. (trading as Fitzgerald Auto Mall and Fitzgerald Volkswagen), and Volkswagen Group of America, Inc., in connection with the Defendants' denial of a warranty claim for a defect to his automobile. The Plaintiff asserts breach of warranty claims pursuant to the Magnusson-Moss Warranty Act, 18 U.S.C. § 2301, *et seq.*, the Maryland Lemon Law, Md. Code Ann., Com. Law § 14-501, *et seq.*, and the Uniform Commercial Code, as adopted by Maryland in Md. Code Ann., Com. Law §§ 2-313 and 2-314, in addition to Maryland common law claims for breach of contract, and fraud and misrepresentation. Now pending are the Defendants' Motions to Dismiss the Amended Complaint (ECF Nos. 30 & 31) and the Defendants' Motions to Strike the Second Amended Complaint (ECF Nos. 34 & 35). The parties' submissions have been reviewed and no hearing is deemed necessary. *See* Loc. R. 105.6 (D. Md. 2011). For the reasons that follow, the Defendants' Motions to Strike the Second Amended Complaint (ECF Nos. 34 & 35) are DENIED, Defendants Fitzgerald Auto Mall and Fitzgerald Volkswagen's Motion to Dismiss (ECF No. 31) is

GRANTED, and Defendant Volkswagen Group of America, Inc.'s Motion to Dismiss (ECF No. 30) is GRANTED IN PART and DENIED IN PART.[1]

BACKGROUND

For purposes of a motion to dismiss, this Court accepts as true the well-pled, non-conclusory factual allegations in a plaintiff's complaint. *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011). The Plaintiff purchased a new 2012 Volkswagen Passat on or about December 27, 2011. Am. Compl. ¶¶ 1, 15, ECF No. 28. However, there is no allegation with respect to the car dealership from which the Plaintiff purchased the vehicle, and it is undisputed that Defendants Fitzgerald Auto Mall and Fitzgerald Volkswagen (collectively, "Fitzgerald") did not sell the vehicle in question to Nicholson. Def. Fitzgerald's Mem. in Support of Mot. to Dismiss 2, ECF No. 31-1. At the time of purchase, Defendant Volkswagen Group of America ("Volkswagen") provided Nicholson with a New Vehicle Limited Warranty, covering the vehicle for any manufacturer's defect in material or workmanship for a period of 3 years or 36,000 miles, and a Powertrain Limited Warranty to correct any manufacturer's defects associated with the engine, transmission, or drivetrain for a period of five years or 60,000 miles. Am. Compl. ¶¶ 17-18. Both Warranties state that they will be honored by "any authorized Volkswagen dealer in the United States, including its territory." *Id.* ¶ 23. The Plaintiff drove the Passat, and periodically had it serviced by

[1] Concurrent with the original Complaint, the Plaintiff filed a Motion for Summary Judgment (ECF No. 5). By filing successive amendments to the Complaint without renewing the Motion for Summary Judgment, the Plaintiff appears to have abandoned that Motion. This Court also notes that there is insufficient evidence in the record at this stage of the proceedings to warrant the entry of summary judgment in the Plaintiff's favor. Therefore, his Motion for Summary Judgment will be DENIED. In addition, the Defendants' Motions to Dismiss the Original Complaint (ECF Nos. 12 & 16) are DENIED AS MOOT.

mechanic Troy Gross, at his shop Troy's Auto. *Id.* ¶ 26. At his last recorded oil change on June 5, 2013, the vehicle had been driven 27,334 miles. *Id.*

On July 25, 2013, within 19 months of purchase, the Plaintiff was driving the vehicle at approximately 50 miles per hour when he alleges that it suddenly accelerated to 75-80 miles per hour on its own. Am. Compl. ¶ 4. Immediately thereafter, the vehicle shut down, white smoke emerged, and the car would not start again. *Id.* ¶ 5. Nicholson promptly reported the incident to Defendant Fitzgerald and provided documentation of all three oil changes that had been performed on the Passat by Troy's Auto. *Id.* ¶¶ 24-27. Fitzgerald provided a loaner car while the Plaintiff's Passat was inspected at Fitzgerald's facility. *Id.* ¶ 34. Fitzgerald employee Andrew Day stated that there was a hole in the side of the engine, a significant amount of antifreeze was spread throughout the engine compartment, and the turbo cap was blown off.[2] *Id.* ¶ 7-9.

On July 29, 2013, Day informed the Plaintiff by telephone that the warranty did not cover the damage because the oil filter was too old. *Id.* ¶¶ 28-29. Day also stated that the receipts from Troy's Auto were "not acceptable." *Id.* ¶ 29. The Plaintiff requested, and Fitzgerald provided by facsimile, written documentation of the decision. *Id.* ¶ 30. However, the written verification contradicted Day's previous explanation; the fax stated that "it appears engine was over full with oil." *Id.* Although Nicholson pointed out the differing statements, the Defendants provided no further explanation at that time. *Id.* ¶ 31. When

[2] In his original and Amended Complaints, the Plaintiff alleged that his own mechanic, Troy Gross, stated that the oil was clean, at a normal level, and had no water in it. Am. Compl. ¶¶ 6, 10. In his Second Amended Complaint, the Plaintiff alleges that it was Day of Defendant Fitzgerald, not Gross, who made this representation. Second Am. Compl. ¶¶ 6, 10. This discrepancy and the propriety of the amendment are the subject of the pending Motions.

Nicholson inquired as to how it was determined that the oil was overfilled when all of the oil had blown out through a hole in the side of the engine, Day responded that it was "speculation." *Id.* ¶ 32. Day also stated his belief that the Plaintiff's mechanic, Troy Gross, was a "fraud" and that the invoices of his service were "fraudulent" because "Passat" had been misspelled. *Id.* ¶ 33. On July 31, 2013, Fitzgerald's Director of Service, Don Sanders also expressed his opinion that the receipts seemed "suspicious" and "a fraud due to the misspelling of 'Passat.'" *Id.* ¶ 34. Sanders then demanded that Nicholson return the loaner vehicle that Fitzgerald had provided. *Id.* Sanders stated that the decision had been "made by a higher up." *Id.* ¶ 35.

Later that same day, the Plaintiff forwarded the same service receipts to Defendant Volkswagen Group of America, Inc. *Id.* ¶ 36. About one week later, on August 7th, Volkswagen Regional Case Manager "Erin B." sent the Plaintiff a fax informing him of Volkswagen's determination that the "crank case of the engine [was] overfilled with oil," and "this is not a manufacturer shortcoming." *Id.* ¶¶ 36-37. Erin B. sent a second fax the same day, which was identical except that it added, "The Baltimore Fixed Operations Manager (FOM), our highest point of contact in the field, also reviewed the diagnosis, and has determined that this is not a manufacturer shortcoming." *Id.* ¶ 38. Nicholson alleges that the Defendants made certain statements with the purpose of defrauding him by avoiding payment for replacement or repair of the Passat. Am. Compl. ¶ 67.

In the opinion of the Plaintiff's expert, "oil was forced out of the engine causing a rod to blow and pierce the engine block wall, resulting in a catastrophic failure of the engine

and vehicle."[3] Am. Compl. ¶ 20. According to the expert, faulty and improperly functioning valve seals caused the engine to fail, and he ruled out other causes such as overfilling the engine oil. *Id.* ¶¶ 20-21. In addition, the Plaintiff alleges that if the oil had been overfilled at his last oil change in June of 2013, the engine would have blown almost immediately and he could not have continued to drive it for almost two additional months. Am. Comp. ¶ 65.

On August 7, 2013, Defendant Fitzgerald charged the Plaintiff's credit card $350.00 for the loaner car without authorization. Am. Compl. ¶ 39. That day, the Plaintiff had the Passat towed to his residence, where he observed what appeared to be an aluminum seal from the mouth of an oil container sitting on top of the engine. *Id.* ¶ 40. There was oil on the aluminum seal and the oil filter missing. *Id.* The vehicle remains at the Plaintiff's house and the Defendants have refused to replace it or pay the cost of a new engine. *Id.* ¶¶ 24, 40.

The Plaintiff originally filed suit in the Circuit Court of Maryland for Anne Arundel County via a verified Complaint (ECF No. 2). The Defendants removed the case to this Court on the basis of federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1441, in light of the claim made under the Magnusson-Moss Warranty Act, 18 U.S.C. § 2310. The Defendants each moved to dismiss (ECF Nos. 12 & 16). The Plaintiff filed an Amended Complaint (ECF No. 28), asserting six counts against each Defendant, which the Defendants again moved to dismiss (ECF Nos. 30 & 31). In responding to Volkswagen's

[3] The Plaintiff's expert is identified as Michael Fallon for the first time in the Second Amended Complaint. Although there is a dispute regarding the filing of this amendment directly after the Defendants argued in their Motions to Dismiss that the expert was not properly identified, this Court concludes that whether the expert is identified by name or not is immaterial to the issue of whether the Plaintiff has stated a claim sufficient to survive a motion to dismiss.

Motion to Dismiss the Amended Complaint,[4] the Plaintiff stated that due to a mistake in drafting the Amended Complaint, he filed a Second Amended Complaint (ECF Nos. 32 & 33). The Defendants then moved to strike the Second Amended Complaint (ECF Nos. 34 & 35).

DISCUSSION

**I. Defendants' Motions to Strike the Second Amended Complaint**

At the outset, it is necessary to address the pending Motions to Strike, in order to determine exactly what set of factual allegations are before this Court in deciding the Motions to Dismiss—the facts asserted in the Amended Complaint (ECF No. 26) or the Second Amended Complaint (ECF No. 33).

**A. Standard of Review**

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, a plaintiff may amend his or her complaint "once as a matter of course within . . . 21 days after the service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." After such time has elapsed, or in the case of subsequent amendments, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Rule 15(a) requires that leave "shall be freely given when justice so requires." *Id.* In *Foman v. Davis*, 371 U.S. 178 (1962), the Supreme Court enumerated certain factors to guide federal district courts in making a determination with respect to granting leave to amend a complaint. The Court noted that, "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the

[4] The Plaintiff did not specifically oppose Fitzgerald's Motion to Dismiss the Amended Complaint and does not address the legal arguments therein.

part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Id.* at 182. The United States Court of Appeals for the Fourth Circuit has held that Rule 15 "gives effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006). The court also held that "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Id.* at 427; *see also Sciolino v. City of Newport News*, 480 F.3d 642, 651 (4th Cir. 2007).

**B. Analysis**

The Defendants argue that this Court should not consider the Second Amended Complaint or the facts asserted in Plaintiff's Opposition to the Motions to Dismiss, to the extent that they differ from the allegations in the Amended Complaint. It should be noted that the Plaintiff did not seek or obtain the Defendants' consent, or leave of Court, to file a Second Amended Complaint, but merely did so after announcing that it would in its Opposition to Volkswagen's Motion to Dismiss. This was clearly not in compliance with the requirement in Rule 15(a) that, after the initial period, "a party may amend its pleading only with the opposing party's written consent or the court's leave." *See also Frederico v. Home Depot*, 507 F.3d 188, 201-02 (3d Cir. 2007) ("It is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.") (citation omitted). Furthermore, the Plaintiff changed a crucial factual allegation regarding who stated that the

oil was at a normal level. *Compare* Am. Compl. ¶¶ 6, 10 *with* Second Am. Compl. ¶¶ 6, 10. In the verified Complaint filed in the Circuit Court of Maryland for Anne Arundel County and in this Court, and again in the first Amended Complaint, Nicholson asserted that his "personal mechanic, Troy Gross, checked the oil at the site of the breakdown and found that no oil was leaking onto the ground and concluded that the oil was both clean, at a normal operational level and had no water or other contaminant in it. He verified that the engine, in warranty, was blown and could go no further." Am. Compl. ¶ 10. "A verified complaint is the equivalent of an opposing party affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge." *Mesmer v. St. Mary's Cnty.*, No. DKC-10-1053, 2010 WL 4791884, at *9 n.8 (D. Md. Nov. 18, 2010) (quoting *Williams v. Griffin*, 952 F.3d 820, 823 (4th Cir. 1991)).

The Defendants pointed out the inconsistency of the statement that the oil level was normal with the Plaintiff's allegation that the oil was forced out of the engine when faulty cover seals caused a blown rod that pierced the engine block wall. Def. Volkswagen's Mem. in Support of Mot. to Dismiss 7, ECF No. 30-1. The Defendants noted, "when a complaint contains inconsistent and self-contradictory statements, it fails to state a claim." *Hosack v. Utopian Wireless Corp.*, No. DKC-11-0420, 2011 WL 1743297, at *5 (D. Md. May 6, 2011); *Ramos v. Bank of Am., N.A.*, No. DKC-11-3022, 2012 WL 5928732, at *4 (D. Md. Nov. 26, 2012) (noting that inconsistent allegations need not be taken as true in ruling on a motion to dismiss). In response to the Motions to Dismiss the Amended Complaint, the Plaintiff, without leave of Court, simply filed the Second Amended Complaint, now alleging that Andrew Day of Defendant Fitzgerald was the one who made the representation to the

Plaintiff that the oil in the car was clean, at a normal level, and had no water in it, and that no other individual made such statements.

Although, at a minimum, the Plaintiff's conduct demonstrates carelessness, this Court cannot now conclude that the Plaintiff or his counsel has acted in bad faith as a ground to disallow amendment. Likewise, amendment would not be futile. As to some counts in the Second Amended Complaint, the Plaintiff asserts facts that, when taken as true, state a claim upon which relief can be granted. Therefore, this Court weighs possible prejudice to the Defendants against the desire to decide cases on their merits rather than dispose of claims based on technicalities. *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006). If amendment is allowed, any potential prejudice to the Defendants is minimal. While acknowledging that the Plaintiff's latest, technically improper amendment has caused a slight delay, the case is at such an early stage that there is no surprise to the Defendants. The interest in deciding this case on its merits strongly outweighs any inconvenience caused by the Plaintiff's irregular pleading. Accordingly, this Court will consider the allegations contained in the Plaintiff's Second Amended Complaint (ECF No. 33), and will deny the Defendants' Motions to Strike (ECF Nos. 34 & 35).

## II. Defendants' Motions to Dismiss

This Court now turns to the substance of the Second Amended Complaint. After the filing of the Second Amended Complaint, the Defendants renewed their Motions to Dismiss, arguing that any amendment did not cure the pleading deficiencies already noted.

**A. Standard of Review**

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Therefore, "the purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotation marks and alterations omitted) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). However, this Court "need not accept the legal conclusions drawn from the facts, and [this Court] need not accept as true unwarranted inferences, unreasonable conclusions or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (citation and internal quotation marks omitted).

The Supreme Court's opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). The Supreme Court's decision in *Twombly* articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678. First, while a court must accept as true all the factual

allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Id.*; *Walters*, 684 F.3d at 439 ("The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." (citing *Iqbal*, 556 U.S. at 678.)). Second, a complaint must be dismissed if it does not allege "a plausible claim for relief." *Iqbal*, 556 U.S. at 679, 683 (noting that a court must "draw on its judicial experience and common sense" to determine whether the pleader has "nudged his claim across the line from conceivable to plausible") (citations, internal quotation marks, and alterations omitted).

**B. Count I – Maryland Lemon Law Claim**

The Defendants move to dismiss Count I on the ground that the defect to the Passat occurred outside the time limit set forth in the Maryland Automotive Warranty Enforcement Act, known as the Lemon Law. The Maryland Lemon Law requires that if a manufacturer or factory branch, its agent, or its authorized dealer cannot repair a defect that substantially impairs the value of a vehicle, the manufacturer must provide a comparable replacement vehicle or refund the purchase price. Md. Code. Ann., Com. Law § 14-1502(c)(1)(i)-(ii). In order for the Lemon Law to apply, however, the defect must have occurred during the "Manufacturer's warranty period," which means the earlier of:

(i) The period of the motor vehicle's first 18,000 miles of operation; or

(ii) 24 months following the date of original delivery of the motor vehicle to the consumer.

Md. Code. Ann., Com. Law § 14-1501(e)(1); *Zitterbart v. Am. Suzuki Motor Corp.*, 958 A.2d 372, 383-84 (Md. Ct. Spec. App. 2008) (granting summary judgment to defendant where

plaintiff provided no evidence of a defect that occurred "during the Lemon Law warranty period").

In this case, the Plaintiff alleges that the engine failure occurred on July 25, 2013, after the vehicle had been driven at least 27,334 miles. Second Am. Compl. ¶ 26 (noting that mileage at an oil change on June 5, 2013). He makes no allegation that he contacted any Defendant regarding a defect, or that any defect existed, prior to the Passat having been driven over 18,000 mile limit set forth in Section 14-502 of the Commercial Law Article. Because the alleged defect did not occur during the period defined by the statute, the Maryland Lemon Law does not apply to this case. *Zitterbart*, 958 A.2d at 383-84. Therefore, the Defendants' Motions to Dismiss will be granted as to Count I.

**C. Counts II-V**

In Counts II-V, the Plaintiff asserts claims for breach of express and implied warranties under Sections 2-313 and 2-314 of the Commercial Law Article of the Annotated Code of Maryland, a Maryland common law breach of contract claim, and a claim pursuant to the Magnusson-Moss Warranty Act, codified at 15 U.S.C. § 2301, *et seq*. Counts II-V all involve limited warranties based on Maryland law. *See Laing v. Volkswagen of Am., Inc.*, 949 A.2d 26, 37 (Md. Ct. Spec. App. 2008) ("[Magnusson-Moss] actions for breach of limited or implied warranties are governed by state laws."); *Bussian v. DaimlerChrysler Corp.*, 411 F. Supp. 2d 614, 624 (M.D.N.C. 2006) (noting that Magnusson-Moss claims are subject to the same pleading requirements and defenses as state law warranty claims).[5] Thus, the same factual

[5] The principal difference between a Magnusson-Moss Warranty Act claim and a Maryland law counterpart is that the federal law allows the recovery of attorneys' fees. 15 U.S.C. § 2310(d)(2); *Laing*, 949 A.2d at 37; *see also infra* note 7.

allegations purportedly support all four of these Counts against each of the Defendants, but these claims rise and fall based on the relationship between each Defendant and the Plaintiff. As such, Counts II-V will be dismissed as against Fitzgerald but those claims against Volkswagen will survive the Motion to Dismiss.

**1. Defendants Fitzgerald Auto Mall and Fitzgerald Volkswagen**

Fitzgerald did not sell the Plaintiff the Passat. He bought it from another, unidentified dealer, and Fitzgerald's first involvement with Nicholson was on July 25, 2013 when he reported that the engine had shut down and would not restart. Therefore, Fitzgerald was not a party to the New Vehicle Limited Warranty or the Powertrain Limited Warranty between Nicholson and Volkswagen, upon which Counts I-V are premised. *See* Black's Law Dictionary (9th ed. 2009) (defining warranty as "[a]n express or implied promise that something in furtherance of the contract is guaranteed by one of the contracting parties."). Likewise, Fitzgerald is not a "warrantor" under the Magnusson-Moss Warranty Act. 15 U.S.C. § 2310 ("For purposes of this section, only the warrantor actually making a written affirmation of fact, promise, or undertaking shall be deemed to have created a written warranty, and any rights arising thereunder may be enforced under this section only against such warrantor and no other person."). Accordingly, the warranty-based claims in Counts II-V may not be enforced directly against Fitzgerald.

Neither is Fitzgerald liable as Volkswagen's agent. *Walton v. Mariner Health of Md., Inc.*, 894 A.2d 584, 591 (Md. 2006) ("If the contract is to benefit the principal only, the agent is immune from personal liability for breach of that contract."). Under Maryland law, an agent who acts on behalf of a disclosed principal is not bound by the contract and is insulated

from liability. *Id.* (citing state and federal cases), *accord* Magnusson-Moss Warranty Act, 15 U.S.C. § 2307 (providing that a warrantor may designate and compensate a representative to perform duties under a warranty, but "no such designation shall relieve the warrantor of his direct responsibilities to the consumer or make the representative a cowarrantor."). Thus, although the terms of the Warranties stated that they would be honored by any authorized dealer, this contractual term does not create direct liability against a non-signatory dealer. Fitzgerald simply had the authority to act on Volkswagen's behalf to determine whether the damage to the Passat was covered by the applicable Warranties. But warranty claims are by definition for manufacturer's defects and are therefore paid by the manufacturer; the dealer has no independent duty to perform warranty work without reimbursement from Volkswagen. *See* 15 U.S.C. § 2307. The Plaintiff does not make any argument to the contrary. For all those reasons, Counts II-V will be dismissed as against Defendants Fitzgerald Auto Mall and Fitzgerald Volkswagen.

**2. Defendant Volkswagen**

Defendant Volkswagen moves to dismiss Counts II-V on the ground that the Plaintiff fails to adequately allege a "defect" that could support claims for either breach of express or implied warranty under Md. Code Ann., Com. Law §§ 2-313 and 2-314, a Maryland common law breach of contract claim, or a claim pursuant to the Magnusson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq*. The Plaintiff does not acknowledge the plausibility standard of pleading set forth in *Twombly* and *Iqbal*, but rather argues that the Second Amended Complaint meets the requirements for notice pleading. Pl.'s Opp. to Motions to Strike 3. Nevertheless, contrary to Volkswagen's characterization of the Second

Amended Complaint, Nicholson has adequately alleged a defect. Nicholson plainly states that he purchased the new Volkswagen Passat, that the vehicle suffered a catastrophic failure, and that the failure occurred within the period applicable to several warranties. Although it is Volkswagen's position that the engine failed due to oil overfilling and not a manufacturer's defect, this Court does not decide the merits of the action at this stage. *Presley*, 464 F.3d at 483 (noting that "the purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts"). Taking the Plaintiff's well-pled factual allegations as true, the catastrophic engine failure resulted from faulty seals, which (without deciding the question) could plausibly be construed as a manufacturer's defect covered by warranty. Volkswagen's argument that the Plaintiff's expert's opinion is speculation is not grounds for granting the Motion to Dismiss. Although the expert's determination may ultimately prove to be unsupported by the evidence, the Plaintiff need not prove his case at this juncture. *Sea Pines Real Estate Cos.*, 679 F.3d at 291 ("A complaint need not make a case against a defendant or *forecast evidence* sufficient to *prove* an element of the claim."). He has stated a plausible claim for violations of the various warranties that may apply, and therefore Defendant Volkswagen's Motion to Dismiss Counts II-V will be denied.[6, 7]

---

[6] Volkswagen argues that Count IV for breach of contract should be dismissed for the additional reason that it is duplicative of Count II for breach of express warranty. While both those claims are premised on the same factual allegations, Count II is a statutory claim while Count IV is based solely on the contract between the parties. Because the Plaintiff's claim for breach of contract could exist in the absence of the statute upon which Count II is based, any overlap in the claims is not grounds for dismissal.

[7] This Court notes that the Plaintiff cannot claim attorneys' fees or prejudgment interest for Counts II (breach of express warranty), III (breach of implied warranty), IV (breach of contract), and VI (fraud and misrepresentation) because even if he prevails on any of those claims, there is no allegation of a contractual or statutory provision providing for fee shifting, and there is no allegation

**D. Count VI – Fraud and Misrepresentation**

Finally, all Defendants move to dismiss Nicholson's claim in Count VI for fraud and misrepresentation. Pursuant to Rule 9 of the Federal Rules of Civil Procedure, a higher standard applies to pleading a fraud claim. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "[T]he 'circumstances' required to be pled with particularity under Rule 9(b) are 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (citation omitted). In Maryland, the elements of fraud or misrepresentation are:

> (1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation.

*SpinCycle, Inc. v. Kalender*, 186 F. Supp. 2d 585, 590 (D. Md. 2002) (citing *Alleco, Inc. v. Harry & Jeannette Weinberg Found., Inc.*, 665 A.2d 1038, 1047 (Md. 1995)).

The Plaintiff alleges that the Defendants gave a fraudulent explanation for the damage to his vehicle in order to avoid replacing the car or paying for a new engine. He also asserts that he relied on these representations, but does not state how he so relied or why

---

of wrongful conduct forcing the Plaintiff into litigation with a third party or of malicious prosecution. *Nova Research, Inc. v. Penske Truck Leasing Co.*, 952 A.2d 275, 281 (Md. 2008) (noting the limited exceptions to the American Rule on attorneys' fees). As noted, *supra* note 6, if the Plaintiff finally prevails on his claim in Count V against Defendant Volkswagen under the Magnusson-Moss Warranty Act, he may seek attorneys' fees. 15 U.S.C. § 2310(d)(2). In addition, because his fraud claim in Count VI will be dismissed, the Plaintiff will not be allowed to seek punitive damages.

any reliance was justifiable. Likewise, he does not state how any misrepresentation by the Defendants caused him any damages beyond the engine that was already blown.

Even assuming for the purposes of this Motion to Dismiss that the Defendants intentionally made misrepresentations to Nicholson for the purpose of defrauding him, he alleges that he disagreed with their conclusions and did not believe them. Therefore, he did not rely on the allegedly false representations. Moreover, he did not act on any of the Defendants' representations by, for example, paying the Defendants for repairs. He does not allege any other way in which he was damaged by being told that the engine failure was caused by overfilling of oil. As with any claim, a threadbare recital of the elements of a fraud cause of action is insufficient to survive a motion to dismiss. *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012). Therefore, the Plaintiff has failed to plead his claim for fraud and misrepresentation according to the requirements of Rule 9 of the Federal Rules of Civil Procedure. Accordingly, Defendant Fitzgerald's Motion to Dismiss will be granted as to the fraud claim asserted in Count VI.

In sum, Nicholson has not stated any claims upon which relief can be granted against Fitzgerald Auto Mall or Fitzgerald Volkswagen,[8] but has stated plausible claims against Defendant Volkswagen in Counts II-V only.

## CONCLUSION

For the reasons stated above, the Defendants' Motions to Strike the Second Amended Complaint (ECF Nos. 34 & 35) are DENIED, Defendants Fitzgerald Auto Mall

[8] The Plaintiff has not argued in opposition to Fitzgerald's legal arguments, or contested Fitzgerald's statement that because he has elected not to oppose its Motion to Dismiss, that Motion should be granted. Therefore, in addition to the grounds for dismissal noted above, this Court concludes that the Plaintiff has abandoned his claims against Fitzgerald.

and Fitzgerald Volkswagen's Motion to Dismiss (ECF No. 31) is GRANTED, and Defendant Volkswagen Group of America, Inc.'s Motion to Dismiss (ECF No. 30) is GRANTED IN PART and DENIED IN PART. Additionally, the Defendant's Motions to Dismiss the Original Complaint (ECF Nos. 12 & 16), as well as the Plaintiff's Motion for Summary Judgment (ECF No. 5), are DENIED AS MOOT.

A separate Order follows.

Dated: May 20th, 2014

/s/
Richard D. Bennett
United States District Judge