IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| PAUL NICHOLSON, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RDB-13-3711 |
| VOLKSWAGEN GROUP OF AMERICA, INC., | * | |
| | * | |
| Defendant. | | |
| * * * * * * * * * * * * * | | |

## MEMORANDUM OPINION

Plaintiff Paul Nicholson ("Nicholson" or "Plaintiff") brings this action against Defendant Volkswagen Group of America, Inc. ("Volkswagen Group" or "Defendant"), alleging various statutory and common law claims arising from Volkswagen's denial of a warranty claim for an alleged defect to Nicholson's automobile.[1] Nicholson asserts breach of warranty claims pursuant to the Magnuson-Moss Warranty Act, 18 U.S.C. § 2301, *et seq.*, and the Uniform Commercial Code, as adopted by Maryland in Md. Code Ann., Com. Law §§ 2-313 and 2-314, as well as a Maryland common law claim for breach of contract. Pending before this Court are Defendant's Motion for Summary Judgment (ECF No. 43) and Plaintiff's Motion for Leave to File Sur-Reply (ECF No. 51). The parties' submissions have

---

[1] Initially, Nicholson also brought suit against FOC Inc., also known as Fitzgerald Auto Mall and Fitzgerald Volkswagen (collectively, "Fitzgerald"). Second Am. Compl., ECF No. 33. In a Memorandum Opinion (ECF No. 37) and Order (ECF No. 38) dated May 20, 2014, this Court granted Defendants Fitzgerald Auto Mall and Fitzgerald Volkswagen's Motion to Dismiss (ECF No. 31) on all claims pending against them. This Court also granted in part and denied in part Defendant Volkswagen Group's Motion to Dismiss (ECF No. 30). Specifically, this Court dismissed Counts I and VI, but denied the Volkswagen Group's Motion as to Counts II-V. *See* Mem. Op.

been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2014). For the reasons that follow, Defendant's Motion for Summary Judgment (ECF No. 43) is DENIED and Plaintiff's Motion for Leave to File Sur-Reply (ECF No. 51) is DENIED.

## BACKGROUND

In ruling on a motion for summary judgment, this Court reviews the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *see also Hardwick ex rel. Hardwick v. Heyward*, 711 F.3d 426, 433 (4th Cir. 2013). While there are some disputes of fact, particularly regarding the cause of the engine failure, the parties agree to the essential facts underlying this action.

Plaintiff Nicholson purchased a 2012 Volkswagen Passat with 4,589 miles on December 27, 2011. Def.'s Mot. for Summ. J. Ex. 1, ECF No. 43-3. At the time of sale, Defendant Volkswagen Group provided Nicholson with a New Vehicle Limited Warranty[2] and a Powertrain Limited Warranty.[3] Def.'s Mot. for Summ. J. Ex. 4, ECF No. 43-6. Nicholson drove the Passat, and periodically had it serviced by mechanic Troy Gross ("Gross") at Gross's auto shop, Troy's Auto. Am. Compl. ¶ 26.

On July 25, 2013, Nicholson was driving the vehicle at approximately fifty miles per hour when he alleges that it unexpectedly accelerated to seventy-five to eighty miles per hour on its own accord. *Id.* ¶ 4. The vehicle then abruptly shut down, white smoke poured from

---

[2] The New Vehicle Limited Warranty addressed any manufacturer's defect in material or workmanship for a period of three years or 36,000 miles. Def.'s Mot. for Summ. J. Ex. 4, ECF No. 43-6.

[3] Under the Powertrain Limited Warranty, Volkswagen Group would correct any manufacturer's defects associated with the engine, transmission, or drivetrain for a period of five years or 60,000 miles. *Id.*

the engine compartment, and the car would not start again. *Id.* ¶ 5. Nicholson called Gross and another witness, Larry VanMeter, to the scene, where they "checked the oil dipstick . . . to determine whether there was any water on the dipstick." *Id.* ¶ 6.

Nicholson reported the incident to former Defendant Fitzgerald, who had the vehicle towed to Fitzgerald's facility in Annapolis, Maryland. Nicholson Dep. 31:18-32:5, ECF No. 43-7. Nicholson provided documentation of the three previous oil changes performed by Troy's Auto. Am. Compl. ¶¶ 24-27; Nicholson Dep. 45:20-22. The recorded mileage at the time of the incident was 29,044. Def.'s Mot. for Summ. J. Ex. 6, ECF No. 43-8. Fitzgerald's examining service technician, Chad Cook, noted that the dipstick was overfull. *Id.* He wrote that he believed the engine damage at issue was caused by overfilling the engine with oil. *Id.* Fitzgerald's service consultant, Andrew Day, observed a hole in the engine block and antifreeze throughout the engine compartment. Day Dep. 28:19-29:1, ECF No. 43-9; Am. Compl. ¶¶ 7-9. After several communications back and forth, Volkswagen Group ultimately issued a final denial of warranty coverage on August 7, 2013. Def.'s Mot. for Summ. J. Ex. 9, ECF No. 43-11. As its reason for denial, Volkswagen Group explained that the engine crankcase had been overfilled with oil. *Id.*

Nicholson subsequently had the vehicle removed from Fitzgerald and towed to his residence. Am. Compl. ¶ 39. Gross, his mechanic, then removed the engine. Gross Dep. 37:1-39:3, ECF No. 43-12. After sending a photo dated December 10, 2013 of the intact engine to Defendant's counsel, Plaintiff's expert, Michael Fallon ("Fallon"), disassembled the

engine.[4] Fallon Dep. 32:4-5, ECF No. 43-15. Nicholson then sent the disassembled engine to Defendant's expert, Larry West ("West"), for his inspection. Mem. in Supp. of Def.'s Mot. for Summ. J., at 3 n.3. Fallon concluded that a defect in the defect in the "positive crankcase ventilation" ("PCV") system allowed oil to enter the engine compartment and cause the "catastrophic engine failure." Fallon Aff., ECF No. 43-17; Fallon Dep. 33:21-34-2.

Nicholson originally filed suit in the Circuit Court of Maryland for Anne Arundel County via a verified Complaint (ECF No. 2). Defendant Volkswagen Group and former Defendants Fitzgerald Auto Mall and Fitzgerald Volkswagen removed the action to this Court on the basis of federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1441, in light of the claim arising under the Magnuson-Moss Warranty Act, 18 U.S.C. § 2310. After Defendants separately moved to dismiss the verified Complaint (ECF Nos. 12, 16), Plaintiff filed an Amended Complaint (ECF No. 28), asserting six counts against each Defendant. Defendants again moved to dismiss (ECF Nos. 30, 31), and Plaintiff filed a Second Amended Complaint (ECF No. 33).[5] This Court granted Fitzgerald Auto Mall and Fitzgerald Volkswagen's Motion on all claims pending against them, but only granted in part and denied in part the Volkswagen Group's Motion. Mem. Op. and Order, ECF Nos. 37, 38. Specifically, this Court dismissed Counts I and VI, but denied the Volkswagen Group's

---

[4] Volkswagen Group argues that Nicholson's counsel mislead it regarding the preservation of the engine, as he allegedly represented on December 2, 2013 that the engine had already been disassembled. Def.'s Mot. for Summ. J. Ex. 11, ECF No. 43-13. Defendant claims that its expert, Larry West, was unable to conduct a full investigation of the engine because he never inspected the engine in its intact state. Mem. in Supp. of Def.'s Mot. for Summ. J., 3 n.3, ECF No. 43-1.

[5] After the filing of the Second Amended Complaint, Defendants moved to strike (ECF Nos. 34, 35). This Court denied Defendants' Motions in its Memorandum Opinion and Order addressing Defendants' respective Motions to Dismiss.

Motion as to Counts II-V. *See* Mem. Op. After a period of discovery, the Volkswagen Group filed the pending Motion for Summary Judgment (ECF No. 43).

## STANDARDS OF REVIEW

### A. Motion for Summary Judgment under Rule 56

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249.

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, this Court must also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted. *Anderson*, 477 U.S. at 249-50. On the other hand, a party opposing summary judgment must "do more

than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999). This Court has previously explained that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

### B. Motion for Leave to File Sur-Reply

As a general rule, this Court will not allow parties to file sur-replies. Local Rule 105.2(a) (D. Md. 2011); *see MTB Servs., Inc. v. Tuckman-Barbee Const. Co.*, No. 1:12-cv-02109-RDB, 2013 WL 1224484, *6 (D. Md. Mar. 26, 2013). In *MTB Services*, this Court explained that a "party moving for leave to file a surreply must show a need for a surreply." Id. (internal citation omitted). A court may permit a plaintiff to file a sur-reply if "a defendant raises new legal issues or new theories in its reply brief." *Id.* (citing *TECH USA, Inc. v. Evans*, 592 F. Supp. 2d 852, 862 (D. Md. 2009)). Even further "[s]urreplies may be permitted when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply." *MTB Servs.*, 2013 WL 1224484 at *6; *see also Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003).

ANALYSIS

### A. Plaintiff's Motion for Leave to File Sur-Reply (ECF No. 51)

Although not chronological, the first issue to be considered is Plaintiff's Motion for Leave to File Sur-Reply. As this Court has explained, a party moving for leave to file a sur-

reply must "show a *need* for a surreply." *MTB Servs.*, 2013 WL 1224484, at *6 (emphasis added). Such need arises when a defendant presents "new legal issues or new theories in its reply brief." *Id.* (internal citation omitted). In requesting leave to file a sur-reply, Nicholson merely states that he is "ready, willing and able" to file such a memorandum. Pl.'s Mot. for Leave to File a Sur-Reply, ECF No. 51. He does not argue that the Volkswagen Group raised novel legal arguments in its reply brief, nor does he demonstrate any specified need for a sur-reply. Nicholson has received his opportunity to contest Defendant's Motion, thus his Motion for Leave to File a Sur-Reply (ECF No. 51) is DENIED.

**B.  Defendant's Motion for Summary Judgment**

In Counts II-V, Nicholson asserts claims for breach of express and implied warranties under Sections 2-313 and 2-314 of the Commercial Law Article of the Annotated Code of Maryland, a Maryland common law breach of contract claim, and a claim pursuant to the Magnuson-Moss Warranty Act, codified at 15 U.S.C. § 2301, *et seq.* These remaining claims all involve limited warranties based on Maryland law. *See Laing v. Volkswagen of Am., Inc.*, 949 A.2d 26, 37 (Md. Ct. Spec. App. 2008) ("[Magnuson-Moss] actions for breach of limited or implied warranties are governed by state laws."); *Bussian v. DaimlerChrysler Corp.*, 411 F. Supp. 2d 614, 624 (M.D.N.C. 2006) (noting that Magnuson-Moss claims are subject to the same pleading requirements and defenses as state law warranty claims).[6] The same

---

[6] The principal difference between a Magnuson-Moss Warranty Act claim and its Maryland law counterpart is that the federal law permits recovery of attorney's fees. 15 U.S.C. § 2310(d)(2); *Laing*, 949 A.2d at 37.

facts and arguments thus support all four of these remaining Counts against Volkswagen Group.

To establish a breach of an implied or limited warranty in Maryland, a plaintiff must demonstrate "'three product litigation basics': the existence of a defect, attribution of the defect to the seller, and a causal relationship between the defect and plaintiff's damages." *Crickenberger v. Hyundai Motor America*, 944 A.2d 1136, 1143-44 (Md. 2008) (quoting *Ford Motor Co. v. General Accident Insurance Co.*, 779 A.2d 362, 370 (Md. 2001)). In satisfying these "three product litigation basics," a plaintiff shows that there is "some evidence beyond mere speculation which would enable [a] jury to rationally decide it is more probable than not that the defect existed at the time of sale[.]" *Id.* Thus, a plaintiff who fails to establish a defect or link that defect to the manufacturer cannot recover for breach of implied or express warranties in Maryland. *See Crickenberger*, 944 A.2d at 1145 (the plaintiff offered no evidence "tending to eliminate any likelihood that the defect that caused [the Hyundai to malfunction] was created after [the vehicle left HMA's control]") (internal quotation marks omitted); *Harrison v. Bill Cairns Pontiac of Marlow Heights, Inc.*, 549 A.2d 385, 390 (Md. Ct. Spec. App. 1988) (rejecting a plaintiff's sole evidence of a defect – expert testimony that "[c]ars shouldn't catch on fire going down the road and drop molten debris on people's feet.").

A plaintiff establishes a defect through either direct or circumstantial evidence. *Crickenberger*, 944 A.2d at 1144. Although a factfinder may infer a defect from the mere occurrence of an accident, circumstantial evidence must be present that "tends to eliminate other causes, such as product misuse or alteration." *Id.* (internal citation omitted). Additional

factors considered in evaluating circumstantial evidence include, but are not limited to, "(1) expert testimony as to possible causes; (2) the occurrence of the accident a short time after the sale; (3) same accidents in similar products; (4) the elimination of other causes of the accident; [and] (5) the type of accident that does not happen without a defect." *Harrison*, 549 A.2d at 390 (quoting *Cornell Drilling Co. v. Ford Motor Co.*, 359 A.2d 822, 827 (Pa. Super. Ct. 1976)).

In this case, Nicholson has not established direct evidence of a defect attributable to the manufacturer, but he has provided sufficient circumstantial evidence from which a reasonable jury could infer the requisite defect. Unlike the plaintiff in *Harrison*, Nicholson Nicholson does not simply offer the occurrence of the accident as his sole evidence of a defect. Instead, he relies on the testimony of his expert to substantiate his claim. Michael Fallon, Nicholson's expert witness, explained that the "catastrophic engine failure" was caused by oil entering the engine compartment due to a defect in the "positive crankcase ventilation" ("PCV") system.[7] Fallon Aff.; Fallon Dep. 33:21-34:2. Moreover, Fallon testified that this type of defect was attributable to the manufacturer, rather than the product of Nicholson's own misuse of the vehicle. *See* Fallon Aff.

---

[7] Defendant contends that Fallon altered his theory between his first affidavit and his deposition. Mem. in Supp. of Def.'s Mot. for Summ. J., at 17. First, Fallon concluded that the "valve cover seals" were defective, causing the influx of oil into the engine compartment. Fallon Aff. In his deposition, Fallon then stated that the defect in question arose in the "PCV system," acknowledging that the vehicle did not have "valve covers." Fallon Dep. 33:21-34:2. He explained that his use of the term "valve covers" was a "typo," and that the "PCV system is part of the valve cover." *Id.* Any change in Fallon's theory of the defect is a question of fact and witness credibility to be addressed by the jury at trial.

In addition to providing an explanation for the engine failure, Fallon's testimony also offers sufficient evidence to eliminate Volkswagen Group's theory of overfilling of oil. The vehicle's last recorded oil change occurred on June 5, 2013, over a month before the incident. Am. Compl. ¶ 26. Thus, under Defendant's theory, Nicholson's mechanic, Tony Gross, overfilled the oil on that occasion, eventually causing the total engine failure. Fallon, however, stated that an overfilled engine would have "blown almost immediately," and certainly not nearly two months after the alleged overfilling. Fallon Aff. The record contains no evidence that Nicholson overfilled the oil himself after his last recorded oil change, nor that he did not use the vehicle during this period. Nicholson's proffered evidence thus rises above "surmise, conjecture, or speculation," as a reasonable jury could conclude that a defect, attributable to Defendant, caused the total engine failure. *Jensen*, 437 A.2d 242, 245 (Md. 1981). Accordingly, Volkswagen Group's Motion for Summary Judgment is DENIED.

## CONCLUSION

For the reasons stated above, Defendant Volkswagen Group's Motion for Summary Judgment (ECF No. 43) is DENIED and Plaintiff Nicholson's Motion for Leave to File Sur-Reply (ECF No. 51) is DENIED.

A separate Order follows.

Dated: April 7, 2015                                    _____s/s_____
                                                         Richard D. Bennett
                                                         United States District Judge